Three of our cases today are submitted on the briefs. Those are United States v. Petty, United States v. Munoz, and Betty v. Ashcroft. With that, we'll begin arguments with United States v. Morgan and Goodman. Good morning, your honors, and may it please the court. My name is Myra Mossman. I'm the court-appointed appellate attorney for Tyra Goodman. She was convicted of bank fraud and making false statements to a financial institution in the federal district court. There are three issues before the court this morning. One, a challenge to the district court's- Why don't you speak up just a little bit? Okay. Yes, your honor. There are three issues before the court this morning. The first is a challenge to the district court's evidentiary ruling regarding the admission of the bankruptcy petition. The second is a claim of judicial misconduct at trial. And the third is a sentencing and restitution challenge regarding the amount of loss calculation. Now, first, I'd like to address the district court's evidentiary ruling admitting the bankruptcy petition. Why wasn't this just a prior inconsistent statement under Federal Rules of Evidence 801? Your honor, I feel that that is an incorrect admission amendment. This bankruptcy petition was withdrawn. So it's not an affirmative assertion by Ms. Goodman. Well, why doesn't that go to its weight? Just as if someone said out loud, I ran the red light, and then the next day said, no, I didn't. I was mistaken. I didn't run the red light. Why is it any different than that? She explained that at court, at the trial, in her testimony, that when that bankruptcy petition was filed, she didn't have an opportunity to review it. When she had an opportunity to review it, she felt it was inaccurate on exactly the issue that was presented on the amount owed to the creditors, and she withdrew that petition. Well, I guess my question in follow-up to Judge Nelson's is simply why isn't that an issue of cross-examination or redirect examination and an issue of weight rather than admissibility? Well, first, we argued that this we didn't argue under 801A. We argued under 404B, prior acts. And so we did we I didn't look at this as a statement. I saw this as an act and that it was a shouldn't have been admitted because it was highly prejudicial. I guess the question is why shouldn't we look at it as a statement under 801? Because she withdrew it because it didn't accurately reflect her positions. It wasn't a positive assertion, which is sort of a definition of a statement. I think I understand your position. Thank you. Furthermore, Ms. Cook, for a 613 evidentiary ruling, a prior statement again, she wasn't given a full and fair opportunity to explain this bankruptcy petition. She did have an opportunity outside of the presence of the jury, but she wasn't given a fair opportunity to explain it because the court had warned her that she was facing possible bankruptcy fraud. And so she was under a Fifth Amendment warning. And so either of its the government argued E and a 613, and we contest all those type of admissions under those type of provisions. But that argument was never made to the jury that she was it wasn't admitted to prove that she had committed bankruptcy fraud. No. She was just warned by the court outside of the presence. So her ability to fully and fairly express this, the contents of the bankruptcy petition wasn't offered to her, as it should be under 613. The person saying this, writing the document, the author of the document, should be given a fair opportunity to explain it, and she wasn't. She was under a warning and under the advice of counsel as well. And our final point on this is concerning the discovery. This was certainly addressed in the appellate's opening brief, that the government did not give sufficient 404B notice requirement, and the court waived that requirement and admitted it under cross-examination. And furthermore, the advisory committee notes to the 1991 amendment specifically recognized 404B evidence as other act evidence, as impeaching evidence, and allowed to be brought in on cross-examination. Our second issue before the Court is regarding judicial misconduct at trial. And this circuit recognizes in United States v. Mostello that the judge is given some latitude in examining the witnesses to clarify the evidence. But it's our position that the court overstepped its bounds here. The appellate's opening brief certainly provided the court with the full rendering of this testimony. We provided you the full transcript in our excerpts of record. But didn't the court give a curative instruction? It said, no question of mine is to suggest in any way what verdict I think you should find. Why wasn't that sufficient to cure the court engaging? Judge Nelson, we understand that that was an attempt at curative. But he didn't address the specific questions, the amount of examination. He specifically put this in the singular, the question, as if he was asking questions, one question. This was a cross-examination. This was an interrogation. And our position is it was adversarial and it was favoring the prosecution. For instance, the court asked Ms. Goodman, why did the witness, the victim witness, come to you in the first place? He could have, in all fairness and impartiality, could have asked the witness herself when she was on the stand. That was not done. Don't you have precedent, Ms. Circuit, about the giving of an instruction on this subject? Yes, Your Honor. We're against you in it. It's against us. But we feel that this particular instruction was not sufficient. It only attempted to cure question. This was a cross-examination. This was an interrogation. And it was outlined as such. I have a question for you before we run out of time for you and your co-counsel, having to do with the projected release dates of the defendants. One of your biggest arguments concerns the calculation of the length of the sentence. And I'm wondering when they are supposed to get out. My understanding is it's in October. For Ms. Goodman. Not until October. Yes. Morgan was under a different set of sentencing. I think Mr. Morgan was, well, we can ask counsel. This month was to get out. He was given different types of sentencing. Let me address my third issue in the remaining time regarding the calculation of loss for sentencing and restitution. At the outset, we did raise the restitution argument and talked about in the appellate's opening brief that Ms. Goodman was responsible for a loss, which instead of caused  This circuit has not decided bargain for calculated interest under the 1995 guidelines. The government wants to address devoutly, but that's not controlling here. And if I would please use the remainder of my time for rebuttal. Ms. Peterson. Good morning, Your Honors. At least it's one of Peterson for appellant Derek Morgan. First, to answer your question, Mr. Morgan is going to be released on June the 20th of this month. With regard to the issues that pertain to the length of his sentence, unless we can issue an opinion in the next 10 days, there will be no live issue pertaining to the length of his prison run. Well, basically, Your Honor, I believe that it would be directly related to the restitution issue. Well, insofar as the analysis is different, though, wouldn't the length of imprisonment piece become moot once he gets out on June the 20th? Obviously, the restitution is not moot. I'm not sure if it would be moot. I mean, just the fact that he receives a lesser sentence may be relevant at a later time if, you know, possibly. As distinct from the fact of his conviction. He's not challenging his conviction, as I understand it, but only his sentence. Am I right about that? That's right. Okay. So it's up to the court to determine whether it would be moot, but I believe it is directly related to the restitution issue, and that's why it's been raised. And to begin with, Mr. Morgan only had the two issues in regards to interest, the amount of loss and also as applied to the amount of restitution. And both of the defendants, Morgan and Goodman, were sentenced under Sentencing Guideline 2F1.1, which was found in the 1995 version of the Guidelines Manual. And subsequently in 2001, 2F1.1 was deleted, and 2B1.1 was amended to include the loss for fraud offenses. And to determine whether interest is included or excluded under 2F1.1, it's important for the court to consider the subsequent amendment to 2B1.1, because the question is whether 2B1.1 is retroactive. And it is a prone position that it is retroactive for several reasons. First of all, it appears that 2B1.1, the application note to 2B1.1, which is application note 2DI, was a clarifying amendment rather than a substantive amendment. And it has long been the position of the circuit that where an amendment resolves a circuit split in regards to an issue, that it is a clarifying amendment rather than a substantive amendment. And under the Sentencing Guidelines, if an amendment is clarifying rather than a substantive amendment, then it should be considered in considering, you know. And so the government appears to argue that since there was no specific mention that it was clarifying, that it was a substantive change and not retroactive. Well, according to Appendix C, I could give you the page numbers. I believe it was starting at page 183 to 184. The court specifically said that this was going to resolve a circuit split, although they didn't specifically say, you know, whether it was substantive or clarifying. If you look at that language, that it resolves a circuit split, and also when you examine both application notes to the earlier version and the later version, you can see that it was a clarifying amendment, because application note 7 does not include interest in the amount, in what should be considered loss under 2F1.1. It merely states that loss is the amount of, is the value of the money, property, or services unlawfully taken. And in a separate case called the Newman case, this court specifically stated in interpreting 2B1.1 for a different offense that was the offense of intentionally starting a fire, the court said that because the definition of loss did not specifically include consequential losses, that was not included in calculating loss. So it's the same parallel situation here, where under 2F1.1, application note 7, there is no mention of interest as an item of loss. A separate side comment, which says an example of an item that is not loss, is what you would call opportunity cost interest. And so you are eating into your rebuttal time. I'm sorry, Your Honor. I would like to reserve the rest of the time for rebuttal. Thank you. May it please the Court. I'm Mike Rofel on behalf of the United States. Your Honors, if I may, I'll start with the sentencing issue. The government's position is that the 2001 amendment was substantive and not clarifying. Before you get to that, what is your information? It sounds as if Mr. Morgan has a firm release date of June 20th, and counsel is uncertain about Ms. Goodman's release date. Do you know what that is? I don't, Your Honor. That information is, as the Court probably knows, very easily available on the Bureau of Prisons' website, but I simply don't have that with me today. It is a matter of one guideline level that's at issue here, as the law firm defendants got a ten-level enhancement for causing a loss of more than $500,000. Under their argument that the 2001 change should be retroactive, that would knock it down one level to a plus nine. If they were sentenced under the current guidelines, the post-2001 guidelines, they would receive a plus 14 because those guidelines increased their loss amounts. In this particular amendment, Amendment 617, as we state in our brief, not only did the Commission not use the word clarify, which is sort of the magic word that various opinions say indicates. So let me just tell you the two issues that I have with your argument. You've used the phrase magic word of clarifying, and I guess I wonder whether that's necessary or merely sufficient. In other words, if it says, hello, I'm a clarifying amendment, we know that's what it is. Yes. But if it says nothing, if it doesn't say I'm substantive or I'm clarifying, it's just silent. Why don't we look behind that to what it really is? That's the first piece of the question. The second is that this was a complicated amendment with a number of features to it, some of which are substantive and some of which are clarifying. So how does that affect your argument? Your Honor, I would put it the best way in the case law is that it's neither necessary nor sufficient, but it's one factor that the Court could look to. There's a number of cases from this Court, Mooneyham, Fagan, Washington, Bishop, Martinez, all in our brief, that seem to put the burden on showing that an amendment is retroactive. So in the absence of anything else. Whose burden? We're analyzing the intention of the Commission. So why is there a burden here? The burden of analysis of one who wants to show that it's clarifying or retroactive. Sometimes it's the government, sometimes it's defense. But in the absence of anything else, the case Mooneyham, for example, says when the Commission wants to say clarify, they say clarify. So you think there's a default position that if it's silent, it's substantive? I think that's a fair reading of the cases. However, it's usually not the default position, and it's not here. There's a number of different factors, and I think the only way to look at the cases is to look at that as one factor. Here, it was not just that there's silence on the use of the word clarify, but the Commission, with regard to this particular change, said it had made a decision and it gave reasons for that decision. Well, doesn't it have to make a decision even if it's going to clarify something where it is unclear because there's a circuit split? Why isn't that equally a decision? Respectfully, no, Your Honor. If you look at this Court's decision in Aquino or Aquino, a 2001 decision, which was the most recent decision that kind of laid out a lot of these factors, the Court in Aquino did sort of analysis of what the guidelines meant, and it used the term that was complicated with the issue there, but the term was underlying offense. And it looked at what does underlying offense mean under the guidelines that existed. And so it was kind of doing what this Court does, sort of analysis to determine what the guidelines meant. And that weighs in favor of a clarifying amendment. In Mooningham, the Court, this Court, focused on the word authorize and said the Commission had used the word authorize. Courts are now authorized under Mooningham to, that had to do with acceptance of responsibility, to apply the acceptance of responsibility enhancement. And so in Mooningham, this Court said that that word authorize indicated there had been a change, a substantive change. And my argument is that the Commission using the word decision and giving reasons for it, and the reasons included that they said that their decision is that it's not worth litigating the amounts of interest. And that's a decision that it made. And it went further than simply saying that. It changed what was a passing comment in the guidelines, which previously had said that loss does not, for example, include interest the victim could have earned, sort of prejudgment interest. It changed that to totally new text, prohibiting interest of any kind, finance charges, late fees, penalties, and so on. And so that was a substantive change, an actual change in the law in the Commission who made the decision. And that decision, this is sort of a more subtle point, but that decision accorded with the overall change in 2001. And if you look at the whole beginning of that amendment, 617, the Commission says that what increasing the loss amounts or the penalties for loss amounts, but trying to make the whole system less complex. In my position ---- Ginsburg. Let me just ask a question, and if I'm, excuse me for interrupting. You cited the Washington case. Now, in the Washington case, it held that an amendment to the guidelines affected a substantive change despite the Commission's commentary that it was clarifying. Doesn't this suggest we should look to the function of the revision rather than anything else? I think that the best way to look at it is that's one factor. And that's why Washington and the other cases that say look behind what the Commission said. In other words, Washington says the Commission can't simply label something as clarifying to make it clarifying. One looks at the substance. And I would say the substance is one of the factors the Court should look at. Here, the substance, if you follow this Court's decision in Johns, which Judge Fernandez said in Johns, that where the Commission had prohibited a departure, that's not retroactive because that's something that wasn't there before, that prohibition. Here, this blanket prohibition on interest of any kind, fees, et cetera, is something that wasn't there before in this Circuit's law. And so that ---- Wait, wait, wait. What about ---- Yes. You're trying, I think, to make the whole thing hinge on whether this Circuit had adopted a certain analysis. And that doesn't seem logical to me because if there's a Circuit split, we do have cases that say when there's a Circuit split, both readings of the existing guideline are reasonable and there's an adoption of one side of that, that is a clarification. And logically, that's a clarification both with respect to the Circuits that agree with the new way to read it and those that didn't. So why does the fact that this Circuit didn't have it make any difference? Your Honor, the fact that there's a Circuit split is, I would concede, the one factor in all this analysis, you know, which I would look at as a multi-factor analysis, the one factor that clarified. However, this factor, it's clear from the case law, is simply a canon of construction and the ---- Now, let me ask the underlying question then. Is it your contention that those Circuits that had read the existing guideline the way the amendment now reads were reasonable or unreasonable? Because it seems to me if they were reasonable, then it has to be a clarifying amendment. Well, I respectfully disagree that that should be the test as to whether ---- What's your answer? Was it a reasonable reading of the old guideline? I think it's not. And the reason, if you actually look closely at those cases, and there's only two from the other case, one's a case called Hoyle from the Fourth Circuit. Hoyle, I would argue, if you look closely at it, did not say that interest of any kind is prohibited under the old guidelines. What Hoyle said ultimately, if you look at it closely, was that it doesn't have to reach that question because it was bargained for interest. And the other case, the only other case that was on that side of the Circuit split was a Sixth Circuit case called Guthrie, and that one didn't even say ---- You can't even discern from the opinion what type of interest it was. So I don't think there's any reasoning out there that read the guidelines to prohibit interest of any kind. Even if those cases could be read differently, the huge weight of the argument was with this Circuit in Davuti stating that only bargained-for interest or contractual interest should be included. And that was a very reasoned position. That's a very different thing to exclude from a loss calculation prejudgment interest or interest that someone could have earned from bargained-for interest, interest that was part of the expected to get. So I think the position was eminently reasonable that this Court had before the amendment. When the Guideline Commission changed it, they simply ---- the reasons were that they just wanted to make it simpler, if you look at it. It didn't argue that there was sort of a substantive difference between the two types of interest, just that it was easier to not ---- to take away all the litigation over interest and just ban interest of any kind from the loss calculation. Well, that's not how I read Hoyle. How it seemed to me Hoyle said all interest, 2F1.1 means all interest is excluded. Well, you know, I believe if you look at Hoyle closely, it ultimately didn't reach that decision. But I realize that the Commission did cite it on that side of the circuits, but I concede the Commission did do that. I'm simply basing this on what I think is a closer reading of Hoyle. You know, I don't want to turn everything on that, but I do want to mention that yet another factor, whether the Commission included this amendment, 617, in 1B1.10c, which is the list of retroactive amendments, that's also a factor. This Court ---- Well, isn't the fact that it covered many things, though, doesn't it sort of dilute the force of that? Because there are clearly some parts of 617 that are substantive, but clearly some parts that are clarifying. Well, I think it does dilute, and that's why I would argue that it's simply one more factor. There's a couple cases in our brief Fagan and Foster where the Court just stopped its analysis and said, look, the Commission did not include this amendment in 1B1.10, and that's it. That's all we need to know. I'm not going that far. I'm just saying that that's one of the factors the Court should look at, along with the factor that the Commission used the language of making a decision, along with the fact that it did actually change the law of the circuit and the majority of circuits, along with the fact that the Commission enacted completely new text, banning interest of any kind things, and along with the fact that this was sort of part and parcel of this whole change in the guidelines in 2001 to make the loss levels higher, but to sort of simplify it. For example, the Commission got rid of the more than minimal planning enhancement that used to be in there pretty much routinely in fraud cases. That's no longer there. And I think if you – that's sort of a side point, but that was sort of a simplification measure, just raise the loss amounts overall and take away some of the extra stuff. So it was all part of a substantive change. I don't want to lose addressing a couple of the other arguments in this case. On the district court's questioning, the Court mentioned the instruction that the Court gave about the jury not giving weight to the district court's questioning. The instruction was actually better, and there was a pre-instruction before the trial started that we missed in our brief. It's on page 28 of the Government's Excerpt of Records, and the Court instructed the jury, during the course of this trial, I may occasionally ask questions of a witness in order to bring out facts which may not be fully covered by the testimony. You are not to consider my questioning of a witness, even if it may become lengthy, as an indication of what I feel about the case in general or the testimony of that witness in particular. That we missed in our brief, but that was before the trial. And that, in conjunction with the instruction at the end, was even more indication to the jury that the judge's questions were not supposed to be taken into account. Well, there were the curative instructions, and we do have a Ninth Circuit case on that. But if you look at the nature of the questioning, it appears that the judge was essentially usurping the prosecutor's role. He says, have you ever heard of somebody making an investment with which they would get no return? Well, didn't that somehow advise you? Things of that nature are pretty strong in the presence of the jury. That one question, Your Honor, I agree was argumentative. was doing what it was permissible to do in general, which is exploring the evidence or making clear the evidence in a couple different areas. And I believe the questioning took only seven or eight pages of transcript at the very end of the trial, in a trial that had 600 and some pages of transcript. And I think under the plain error standard, this was never objected to at the time. There wasn't a mistrial motion. There wasn't a new trial motion. And so defendant agrees that there's a plain error standard here, that I think just one question from the court is not really enough to undo a whole jury trial and to show the appearance of partiality. I have only 15 seconds left. So if there are any questions on the other issue I haven't addressed, the bankruptcy petition, I would like to address them. Any questions? No. Thank you, Your Honor. Thank you very much, Your Honor. If you have some rebuttal time, whichever, if you would like to take it. You have about a minute. Ms. Goodman, I just have two points to make on rebuttal. Regarding the sentencing. Please speak up. Regarding the sentencing, Devouty is not controlling here. The government is urging this Court that Devouty decided the issues it held in conjunction with calculation of losses bargained for interest. This is not true. Devouty was under a different statutory provision. It was interested the interest was offsetting interest in the calculation of loss, having to do with a mortgage fraud. And regarding the misconduct of the Court's questioning. The Court's questioning went to the heart of Ms. Goodman's defense. It's our position that no curative instruction could have taken the adversarial nature out of the Court's questioning. If there's any questions, I will submit. Thank you. Yes, certainly. First of all, I believe that Appendix C to Amendment 617 shows the Sentencing Commission's intentions when they said that there was a circuit split, and they mentioned Hoyle as standing for the proposition that all interest was excluded. And that shows that it was a clarifying amendment. And briefly, in an opening brief, I believe it said page 188, but it's actually page 183. Briefly, in regards to restitution, since restitution deals with actual losses, if interest was not properly included in the losses, then the restitution amount should be reduced. Thank you very much, Your Honor. Thank you. Ms. Chisholm, you just submitted? Excuse me. And we thank counsel for their arguments. The next case on our jacket this morning is United States v. Rivera-Guerrero.
judges: Gibson , Dw Nelson, Graber